O'NIELL, C. J., sees no reason for amending the decree, but otherwise concurs.

---

(97 South. 595)

No. 26113.

## CAPELL et ux. v. MOLONY, Supt. of Police.

### In re CAPELL et ux.

(July 11, 1923. Rehearing Denied Oct. 2, 1923.)

*(Syllabus by Editorial Staff.)*

1. **Gaming ⬚68(½)—When game constitutes "banking game" stated.**

   Though game involves alleged element of skill, if proprietor or operator takes all comers, and bets prize in money or property against the players, who, individually or collectively, bet on their own playing or that of one another, so that, if they lose, the money goes to the operator, the game amounts to "banking game," prohibited by Act No. 12 of 1870.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Banking Game.]

2. **Injunction ⬚128—Plaintiff must show clearly and conclusively that acts interfered with by police are not covered by law.**

   Where officers, in making repeated arrests, are claiming to act under statute expressly directing them to take such action, relief by injunction cannot be granted unless plaintiff shows clearly and conclusively that acts inter-

fered with are wholly beyond and in no way covered by the law.

Suit by John C. Capell and wife against Guy R. Molony, Superintendent of Police. Writ of injunction was denied, and plaintiffs apply for writs of certiorari and mandamus. Preliminary writs recalled, and application dismissed.

Maurice R. Woulfe, of New Orleans, for applicants.

Roland B. Howell, Asst. City Atty., of New Orleans (Robert H. Marr, Dist. Atty., of New Orleans, of counsel), for respondent.

DAWKINS, J. Plaintiffs sought from the court below a writ of injunction to restrain the superintendent of police of the city of New Orleans from interfering with them in the operation at the Spanish Fort Park in said city a game called "Gotem." The said game and its operation were described in the petition as follows:

"There are four boards, identical in size, design, and all particulars, each containing round holes of identical size approximately one inch in diameter, bearing numbers running from 1 to 75, said holes being arranged in 5 parallel columns, with 15 numbered holes in each column, substantially as shown in the diagram of one of said boards hereto annexed as Exhibit A and made part hereof."

(2) "That each individual player operates one of said boards at a time, commonly known as the "Gotem" boards, one of the original of which boards will be produced and exhibited to the court on the trial hereof, and which said board is solely and entirely under control of the player, who rolls a small rubber ball slightly less than one inch in diameter into the desired hole bearing the number he wishes to strike; if the player should strike a series of five numbers, corresponding to the corresponding five numbers on the Gotem cards which the player holds, the said individual player is awarded a prize for his dexterity and skill in so manipulating the ball as to strike the five particular holes."

(3) "That your petitioners have paid the city license demanded of them for the year 1923 by the city of New Orleans, and the regular state license, and another special state license levied for the benefit of the Charity Hospital, and have paid for and obtained their regular permit from the mayor of the city of New Orleans, recognizing and describing said game as a game of skill, and allowing petitioners to operate said booth in said park and to conduct said game, for which each player of said game pays the small fee of ten cents for the privilege of playing said game."

Petitioners further alleged that they had been and were violating no law, and that the persistent and continued arresting of petitioners would destroy a valuable property right, and, if permitted to continue, would work them irreparable injury.

The lower court issued a rule to show cause upon the superintendent of police, and in answer thereto he excepted to the jurisdiction of the court ratione materiæ, averred that the petition disclosed no cause of action, but otherwise admitted the arrest of plaintiffs. He further denied the averments of fact in the petition. After hearing, the lower court refused to issue said writ, for the reason that it was convinced that the facts "clearly disclosed the operation of a keno game (held a banking game in City v. Miller, 7 La. Ann. 651), and the complaint was that the police were interfering with the operation of that game." A writ of certiorari and alternative mandamus was issued by this court and the matter is now before us for consideration.

[1] Plaintiff in no wise attacks the validity or constitutionality of any law under which the defendant was claiming to act, but merely relies upon the alleged facts as to the nature of the game not constituting a violation of the law. It is alleged in the petition that there is attached a diagram of one of the boards, referred to as Exhibit A, and that one of said boards would be produced upon the trial. However, neither of said exhibits appears with the original record sent up to this court, and we are unable to determine from the allegations of the peti-

tion the precise details of the game operated. Still, if, as would appear from the petition, notwithstanding the alleged element of skill, the proprietor or operator of the game bets a prize in money or property against the players (taking all comers) who play the several boards in an attempt to win such money or property, the scheme would seem to come within the purview of Act No. 12 of 1870, denouncing the crime of operating a banking game. In other words, if the players, individually or collectively, bet upon the result of their own playing or that of one another, with the result that, if they lose, the money goes to the owner or operator of the game, the same amounts in law to a banking game, as commonly understood and construed by the decisions of this court. State v. Rabb, 130 La. 370, 57 South. 1008.

[2] While the civil courts may, in a proper case, enjoin the arrest and harassment by the police of a person who alleges irreparable injury, in the destruction of a substantial property right, where it clearly appears that there is no law to support such action by the police, yet where, as is the case here, the said officers are relying upon and claiming to act under a statute which expressly directs them to take such action, in order to be entitled to relief by injunction at the hands of a civil court, the plaintiffs must show clearly and conclusively that the acts interfered with by the police are wholly beyond and in no wise covered by such law. This they have not done, and hence have shown no sufficient ground for the granting of an injunction. If, in truth and fact, they are not operating a banking game, then they should be able to show it in defense of any criminal prosecution.

For the reasons assigned, the preliminary writs are recalled, and the application is dismissed, at the cost of the applicants.

ST. PAUL, J., concurs in the decree.