### SPELL v. LOUISIANA IRON & SUPPLY CO. et al.*

### No. 4584.

Court of Appeal of Louisiana. Second Circuit.

Nov. 3, 1933.

Irion & Switzer and C. B. Emery, all of Shreveport, for appellant.

Isaac Abramson, of Shreveport, for appellees.

DREW, Judge.

This case involves nothing but questions of fact. A condensed narrative of the case is as follows:

The Simms Oil Company was the owner of a lease in the Claiborne Oil Field on which there was located ten wells that had been oil producers and were then closed down. On the lease, there was a great amount of water lines, connecting lines, and other pipe, besides the casing and tubing in the ten wells. There were ten storage tanks which contained approximately 1,600 barrels of oil. The oil company wished to dispose of the lease and everything on it, except a compressor, and so notified its representative, Mr. Morehead, in Shreveport, La. Soon thereafter, Mr. Morehead gave this information to plaintiff and told him the Simms Oil Company wanted $5,500 cash, and all he could make over that in disposing of this property he could have. Plaintiff got in touch with Mr. Gold, of the defendant company, a concern dealing in secondhand oil well supplies, pipe, casing, etc., and told him of the proposition. After some discussion and acting on the representation of plaintiff as to what was on the lease, Mr. Gold went with plaintiff to the office of Mr. Morehead, and, after some bickering between Gold and Morehead, Gold made an offer of $5,000 for the property, which offer was submitted to the oil company in Dallas, Tex., and a few days later, accepted.

At this time, in the presence of Morehead, it was agreed between Gold and plaintiff that plaintiff would have as his commission all the oil in storage on the lease. After the oil company had accepted the offer, Gold and plaintiff instructed Morehead to have the assignments made out to defendant for the lease and everything on it, and the oil in storage to plaintiff. This was done, and the assignments sent to Morehead by the oil company for delivery upon the payment of the purchase price, at which time defendant refused to carry out the contract to give plaintiff all the oil in storage, and offered him $100, later raising it to $200 and insisting that Morehead assist him in getting plaintiff to accept the $200, which Morehead refused to do. After this squabble between plaintiff and defendant came up about the commission plaintiff was to have, Morehead forgot the transaction and proceeded to try and sell the property else-where, which he succeeded in doing about one month later to S. Bender & Co., for $5,500 cash.

The Simms Oil Company is not a party to this suit and has no interest therein. Defendant claims it refused to carry out the contract because plaintiff had misrepresented to it what the property consisted of and that no one of its firm had seen the property or inspected it at the time of the contract, the acceptance, and order for assignment, but were relying entirely upon the representation of plaintiff; that after the order as to how to make the assignment was given, one member of its firm inspected the property and found that plaintiff had grossly misrepresented what was there. It contends that plaintiff represented the casing in the wells to be 6⅝-inch casing when it was all 6-inch casing; that he represented there were only 250 to 300 barrels of oil in storage, when there were 1,600 barrels of oil; that 6-inch casing is worth 15 cents to 20 cents less per foot than 6⅝-inch casing. It claimed that he represented more pipe than there was.

It is not necessary to set this out in detail, for the record clearly establishes that there was even more pipe than defendant claims plaintiff represented to be there. A careful study of the record discloses that the question of the casing in the wells being 6-inch, instead of 6⅝-inch, had nothing to do with breaking up the trade. The only thing that prevented the contract from being carried out was the quantity of oil which the record discloses was sold by Bender, the final purchaser, and after all charges, royalties, conservation fees, etc., were deducted, netted Bender more than $1,000.

Plaintiff contends that he did not misrepresent the number of barrels of oil in storage and that did not concern defendant. If there had been more oil, it would have been all the same and he would have been entitled to it. Defendant contends that plaintiff represented that there were only 250 to 300 barrels of oil in storage. Mr. Gold is positive in his testimony on this point, and is corroborated by his bookkeeper, who checked what was told Gold by plaintiff, in order to arrive at its value. There were no other witnesses to what representations were made by plaintiff, and on this point the case lies between the three as to who was telling the truth. There is nothing in the record to discredit the testimony of Gold and his bookkeeper on this point. Plaintiff is not corroborated in any respect and, to the contrary, without objection, two witnesses testified that his reputation for truth and veracity was bad in the community in which he lives. We are not called upon to pass on the admissibility of this evidence, and, since it is in the record without objection, it would be difficult for the court to take the testimony of plaintiff over the two unim-

peached witnesses for defendant. We are bound to hold that plaintiff represented the amount of oil in storage to be 250 to 300 barrels, when in fact there were nearly 1,600 barrels.

It is unreasonable to believe that defendant would have agreed to give as a commission 1,600 barrels of oil in a deal involving only $5,000 worth of property. Gold says he would not have, and we believe him. He says 300 barrels of oil would have netted plaintiff practically $200, and that is what he thought he was giving him and what he offered to give him after he learned the quantity of oil that was there. Plaintiff misrepresented the quantity of oil in storage for the purpose of enriching himself at defendant's expense, and it was such a misrepresentation as justified defendant in law in refusing to carry out the contract.

The lower court rejected plaintiff's demands and the judgment is correct, and it is therefore affirmed, with costs.