GLADNEY, Judge.
This suit was filed in behalf of James Marshall Jones and Carl Wiley Jones for the purpose of collecting a money judgment for $3,468.75 from Herman (Wimpy) Jones. For a cause of action plaintiffs assert the defendant, employed by them as a real estate broker, overcharged and collected from them the above amount in excess of an agreed commission of $25 per mineral acre purchased. Issue was joined by the defendant, who averred his contract with plaintiffs, an oral agreement, contemplated defendant would purchase certain mineral acreage in Webster Parish, and resell the same to plaintiffs for a price of $150 per mineral acre, and that in addition to any profit made by reason of the resale, the defendant would also receive from plaintiffs a commission of $25 per acre. Following trial on the merits, plaintiffs’ demands were rejected and they have appealed.
Resolution of the case requires a determination of the agreement between the parties. Principally factual questions are raised, and, as customary in cases of this kind, the evidence is most conflicting.
At the outset of the trial counsel for the appellee objected to any and all parol evidence offered by plaintiffs tending to establish agency for the purchase of real property. The objection was overruled by the trial judge. In this court counsel renews the same objection and argues the ruling was erroneous.
The argument of counsel is predicated on LSA-C.C. art. 2992 and the following decisions of the Supreme Court: Hacken- *439 burg v. Gartskamp, 1878, 30 La.Ann. 898; Noble v. Plouf, 1923, 154 La. 420, 97 So. 599; and Triangle Farms, Inc. v. Harvey, 1934, 178 La. 559, 152 So. 124. We find these authorities are inapposite to the question under consideration. LSA-C.C. art. 2992 provides that testimonial proof of verbal mandate “is admitted only conform-ably to the title: Of Conventional Obligations." That is, every transfer of immovable property must be in writing. LSA-C.C. art. 2275 et seq. The cases cited involved matters of title to real estate. Thus, in Hackenburg v. Gartskamp, supra, plaintiff sought to compel the widow of an agent who acted under verbal mandate to transfer title to him. Noble v. Plouf, supra, presented an issue as to the authority of an agent to lease land and involved the question of title thereto, the court holding parol testimony inadmissible to establish an agency to lease land. Title was in issue in Triangle Farms, Inc. v. Harvey, supra, wherein the court had before it a petitory action coupled with an injunction.
In Pickens v. Harris, 1926, 160 La. 628, 107 So. 470 the Supreme Court stated:
“The plaintiff is not attacking either the original lease or the assignment to Pratt. The binding effect of both the lease and assignment is recognized in the petition, in so far as they operate a transfer of the mineral rights and privileges.
“The charge against Harris is that he was to make a sale of the lease for the plaintiff on a commission and with the right to deduct the expenses.
“That Plarris represented to plaintiff that he had only gotten $3,400 for the lease and settled with plaintiff on that basis, whereas in truth and fact Harris sold the lease for $6,800, and which latter price he fraudulently concealed from the plaintiff.
“We are unable to conceive how or in what langauge more definite and specific acts of fraud can be charged than as set forth in the plaintiff’s petition.
“If Harris was to sell the property on a commission basis and account to the plaintiff for the net price received as alleged in the petition, and he sold for double the amount he accounted for to the plaintiff, he certainly committed a fraud against the plaintiff, and should be held to account for the price he received, less his commission and expenses.
“The authorities cited by the defendant on the question of the inadmissibility of parol evidence to establish agency to sell real estate are clearly inapplicable to the case as presented by the allegations of plaintiff’s petition.”
The title to real estate is not affected by the issues presented in the instant case. Herein we are concerned only as to whether an improper commission or profit was charged for the services rendered by defendant acting as agent for plaintiffs in the purchase of certain mineral acres.
In the fall of 1956, probably in the month of November or December, the exact date not being certain, the two plaintiffs, the defendant, and W. M. (Cat) Nicholson, were seated at a table in the Jones’ Kitchen, sometimes referred to as the Chicken Shack, which was owned by Herman Jones. Spread out before them were land ownership maps of property adjacent to an oil and gas exploratory well near Minden, which well was being drilled by M. Carl Jones and his two sons, James M. and Carl Wiley Jones. M. Carl Jones proposed that Herman Jones acquire for him certain mineral acreage which was marked upon the maps, and for the services so rendered, offered to pay him $25 per mineral acre. Thereafter Herman Jones purchased at a cost to him of $9,843.75 some 88% acres of the desired mineral acres and assigned the same to plaintiffs for $13,312.50. This sum included $3,468.75 which plaintiffs allege was paid to defendant as a result of *440 defendant’s misrepresentations of the purchase price of said minerals. There is no dispute concerning the amount claimed, defendant admitting he was paid by plaintiffs that sum in excess of what he paid the landowners.
M. Carl Jones and James M. Jones gave their account of the understanding. They averred that Herman Jones represented that the acreage which they wished to acquire could be obtained for prices of from $100 to $125 per acre, and that Herman Jones was to receive no more than the commission above stated. They testified that some time thereafter Herman Jones informed them that in order to acquire the desired acreage he would have to pay the landowners $150 per acre. Plaintiffs say they agreed to this.
The testimony of Herman Jones is equally positive that plaintiffs agreed to purchase from him at the price of $150 per acre, whatever acreage he acquired, and that under that agreement he was privileged to buy for himself the acreage as cheaply as possible.
The several royalty deeds, with two exceptions, were executed by the various landowners on December 16, 17, and 18, 1956. The others were signed on January 2, 1957. Herman Jones was the named vendee in each deed and identical considerations of $500 and other valuable considerations were recited in each. Assignments to plaintiffs were immediately made. Several of plaintiffs’ checks were originally made payable to the landowner, but upon Jones’ request those checks were re-issued with Herman Jones designated as payee. Separate vouchers were made out to Herman Jones for commissions. It was not until some time in February, 1957, that plaintiffs were alerted by one of the landowners to the fact they had been overcharged by defendant, and upon investigation learned of the considerations actually paid the landowners for their acreage. J. M. Jones testified he telephoned Herman Jones for an explanation and the latter attempted to place the blame on Nicholson. Defendant’s version of the conversation is different. This suit was filed on October 9, 1957.
Plaintiffs’ position is corroborated in several particulars. First, canceled vouchers evidence an understanding by them that they were to pay the landowners the amount due each vendor for his royalty acreage. Such vouchers were issued in the names of Mrs. Ruby Atlcins Cox and Walter Almond, and then canceled and made payable to defendant upon the latter’s request. Second, William M. Hatchett, Clarence M. Nield, and Walter Almond testified the defendant advised them the acreage was being acquired for another party, and that he was acting in the capacity of a real estate agent; and third, the evidence plainly shows the landowners were paid from funds received by defendant from plaintiffs. Finally, we observe the initial title opinions were paid for by plaintiffs rather than by defendant. This appears somewhat inconsistent with defendant’s claim of ownership.
After careful examination of the record we find the testimony of Herman Jones unsatisfactory because of inconsistent statements. . He testified on two occasions, first on December 3, 1958, and again on May 6, 1959. On the first mentioned date he declared that he made payments to the landowners with his own money, but he later admitted they were paid with funds received from plaintiffs. He also said that he paid all of the commissions to Nicholson and that the latter performed the greater part of the work in acquiring the acreage. This was shown to be untrue by his own admissions, and by the testimony of Nicholson. He failed to explain his rather unusual obligation to pay the income taxes which accrued from the sales and became due by Nicholson and Archie Davis, the latter of whom he termed a silent partner. His own income tax was not explained, and he failed to call to the witness stand either Davis or the accountant who prepared the returns. Finally, we note the testimony of *441 Herman Jones is contradicted by Hatchett, Nield and Almond.
Although it is argued that defendant’s testimony relative to the terms of the agreement was corroborated by Nicholson, we are not so sure of this. Witness the following uncertainty in the testimony of the latter:
“Q. In his conversation, when you testified that Herman Jones said that he thought he could buy minerals for one hundred and fifty dollars ($150.00) an acre, that was in Jones’ Kitchen? A. Yes.
“Q. He made that statement during course of the negotiations and the discussions about buying it? A. Yeah.
“Q. He represented to them that he could buy for one hundred and fifty? A. That’s exactly the way I seen it.
“Q. Then, when those checks were made out over in their office, he again represented to them that he bought for one hundred fifty? A. No, he sold for one hundred and fifty.”
A similar situation was presented to the court in Spell v. Louisiana Iron & Supply Co., La.App. 2d Cir. 1933, 150 So. 434, 436, where the following statement appears:
“It is unreasonable to believe that defendant would have agreed to give as a commission 1,600 barrels of oil in a deal involving only $5,000 worth of property. Gold says he would not have, and we believe him. He says 300 barrels of oil would have netted plaintiff practically $200, and that is what he thought he was giving him and what he offered to give him after he learned the quantity of oil that was there. Plaintiff misrepresented the quantity of oil in storage for the purpose of enriching himself at defendant’s expense, and it was such a misrepresentation as justified defendant in law in refusing to carry out the contract.” Id., at page 436.
Nor do we believe the plaintiffs who are experienced men in the oil business, would have agreed to allow the defendant to receive $50 per acre in addition to a generous commission of $25 per acre, when the record indicates the customary fee for such services is from ten to fifteen per cent. As charged by defendant, it would approximate sixty per cent.
This court took occasion in Forshay v. Lewis, 2nd Cir. 1955, 81 So.2d 114 to observe that the principle of agency as treated in our Civil Code under Title XV — Of Mandate, art, 2985 et seq., LSA, is authority for many rulings of the appellate courts of this state to the effect that the utmost good faith is exacted in all dealings of an agent touching the interest of his principal. The following statement is contained in 3 C.J.S. Agency § 182, p. 78:
“If an agent by the use of fraudulent means or representations obtains a modification of the contract of agency, thereby making the relationship more profitable to him, he is not entitled to recover the additional compensation under the modification, but he may recover his agreed compensation under the original contract.”
We have reached the conclusion that plaintiffs have met the burden of proof imposed upon them by a preponderance of the evidence. In our opinion the defendant made representations to the plaintiffs not in keeping with his trust for the purpose of collecting the amount claimed in this suit in excess of the commissions to which he was rightfully entitled.
For the foregoing reasons the judgment from which appealed is annulled, reversed and set aside and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiffs, James Marshall Jones and Carl W. Jones, and against Herman Jones, in the full sum of $3,468.75 with legal interest from date of judicial demand, defendant to pay all costs of this suit.
Rehearing denied; AYRES, J., dissents.